IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHWESTERN DIVISION

| | |
|---|---|
| **CHRISTY H. MOORE,** } | |
| } | |
| **Plaintiff,** } | |
| } | |
| v. } | **Case No.: 3:11-CV-1716-RDP** |
| } | |
| **MICHAEL J. ASTRUE,** } | |
| **Commissioner,** } | |
| **Social Security Administration,** } | |
| } | |
| **Defendant.** } | |

## MEMORANDUM OF DECISION

Plaintiff Christy H. Moore brings this action, pursuant to Title II, Section 205(g) and Title XVI, Section 1631(c)(3) of the Social Security Act (the "Act"), seeking review of the decision by the Commissioner of the Social Security Administration ("Commissioner") denying her claim for disability and Disability Insurance Benefits ("DIB"), and Supplemental Security Income ("SSI") . Based upon the court's review of the record and the brief submitted by Defendant, the court finds that the decision of the Commissioner is due to be affirmed.

**I.     Proceedings Below**

Plaintiff filed her applications for disability and DIB, and SSI on April 8, 2008, in which she alleged disability that began on April 8, 2008. (Tr. 70, 91, 96). Plaintiff's applications were initially denied by the Social Security Administration on June 5, 2008. (Tr. 68-71). On July 8, 2008, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 79-80). The Social Security Administration Office of Disability Adjudication and Review granted Plaintiff's request on July 17, 2008, and sent notice of Plaintiff's hearing date on November 12, 2009. (Tr. 24, 82). The hearing was held before ALJ Cynthia Weaver on December 16, 2009. (Tr. 29). In her decision dated

February 4, 2010, the ALJ determined that Plaintiff had not been under a disability within the meaning of §§ 1614(a)(3)(A), 216(i), or 223(d) of the Act since April 8, 2008. (Tr. 10-20). After the Appeals Council denied Plaintiff's request for review of the ALJ's decision, that decision became the final decision of the Commissioner, and therefore a proper subject of this court's appellate review. (Tr. 1-3). *See* 42 U.S.C. §§ 405(g), 1383(c).

Plaintiff was thirty-six years old at the time of the hearing. (*See* Tr. 10, 96). She completed high school, and her previous work experience includes daycare assistant, janitor, shift manager, and QA tech. (Tr. 121, 129). Plaintiff alleges that she has been disabled since April 8, 2008 because of back and knee pain. (Tr. 69, 116). Plaintiff worked prior to April 8, 2008,[1] but has not worked since that date. (Tr. 114).

During the time preceding and following the alleged onset of her disability, Plaintiff sought medical treatment primarily from Dr. Akram Haggag, whom she first saw on April 10, 2007. (Tr. 179-200). During her initial visit, Dr. Haggag diagnosed Plaintiff with acute maxillary sinusitis, allergic rhinitis, hypothyroidism, borderline diabetes mellitus type 2, and chemical exposure. (Tr. 194). He noted symptoms of congestion, headache pain, and fatigue, and recommended healthy eating habits, lifestyle modifications to include walking four times a week, and avoiding allergens. (Tr. 194). On May 1, 2007, Plaintiff returned to Dr. Haggag, complaining of pain, stiffness, and discomfort, primarily in her neck, shoulders, hands, lower back, hips, knees, and feet. (Tr. 192). Plaintiff averred that long hours on her feet at the workplace caused the pain. (Tr. 192). Plaintiff further complained of fatigue, snoring, excessive daytime sleepiness, and night sweats. (Tr. 192).

---

[1] Plaintiff testified she was laid off on April 8, 2008. (Tr. 34). Her employer allowed her to draw short-term disability through the company's insurance, but when that ran out in May 2008, Plaintiff resigned. (Tr. 34).

Dr. Haggag diagnosed Plaintiff with hyperlipidemia, borderline diabetes mellitus type 2, sleep disorder, and fatigue. (Tr. 193). He prescribed Naprelan and reiterated that Plaintiff needed to make healthy lifestyle modifications. (Tr. 193). Plaintiff saw Dr. Haggag again on September 18, 2007 for unexplained shoulder pain. (Tr. 189). Dr. Haggag prescribed Motrin, Robaxine, and Lortab, as well as shoulder exercises. (Tr. 190).

On March 4, 2008, Plaintiff saw Dr. Haggag for treatment of back pain. (Tr. 187). Plaintiff reported that for one week her pain had been between 5 and 6 on a scale of 10. (Tr. 187). Dr. Haggag diagnosed Plaintiff with low back pain with radiculopathy. (Tr. 188). An MRI of Plaintiff's lumbar spine, taken on March 21, 2008, showed normal alignment, vertebral body heights, and marrow signal intensity. (Tr. 222). Plaintiff had disc desiccation changes and mild to moderate neural foraminal stenosis at L4-5. (Tr. 222). There was a diffuse disc bulge with spinal canal measured at 8.3 mm with mild facet hypertrophic changes and no neural foraminal stenosis at L5-S1. (Tr. 222).

During March 2008, Plaintiff also saw chiropractor Bruce D. Thompson four times. (Tr. 163-74). In her initial visit, Plaintiff complained of numbness and right lower back pain radiating down her right leg that began on March 3, 2008 for unknown reasons. (Tr. 169). During three subsequent visits, Plaintiff rated her pain between 0 and 3 on a scale of 10. (Tr. 166-68). Plaintiff stated at her third visit that her "lower back and right leg fe[lt] much better with very minimal pain," and at her fourth visit said she was feeling better. (Tr. 166-67). Dr. Thompson noted that Plaintiff's subjective symptoms were consistent with his objective findings. (Tr. 166-67). In the Instructions for Home portion of the Treatment Notes, Dr. Thompson selected the box "exercise," but he did not check the box for "reduce activity." (Tr. 166-67).

Beginning April 7, 2008, Plaintiff sought treatment from Dr. Ahmad Shikhtholth on the recommendation of Dr. Haggag. (Tr. 183). Dr. Shikhtholth issued a medical source statement stating Plaintiff should avoid heavy lifting of more than ten to fifteen pounds, frequent bending or stooping, reaching, and any long distance walking. (Tr. 183-84). On April 11, 2008, Plaintiff underwent a lumbar epidural steroid injection performed by Dr. Shikhtholth. (Tr. 183). Dr. Shikhtholth issued a statement on April 29, 2008 that re-iterated Plaintiff would be under the aforementioned work restrictions for an unknown length of time. (Tr. 235).

A consultative physical examination performed June 3, 2008 determined Plaintiff had low back pain and a history of degenerative disc disease. (Tr. 206-07). At that time, Plaintiff was 67 inches tall, weighed 266 pounds, and her blood pressure was 142/88. (Tr. 206). Other than her complaints of pain while squatting and performing range of motion exercises, the doctor noted no problems with Plaintiff's hands, arms, legs, and back. (Tr. 207). She was able to walk on her heels and toes. (Tr. 207). Also, her back looked normal, and there was no tenderness to palpation. (Tr. 207).

On April 11, 2009 Plaintiff sought emergency medical treatment for lower back pain and right hip pain. (Tr. 223-30). She was next seen for treatment of lower back symptoms on November 19, 2009. (Tr. 231). Upon examination, Plaintiff was diagnosed with lumbar radiculopathy, lumbar spinal stenosis and lumbar degenerative disc disease. (Tr. 231). She was provided with samples of Celebrex and Lyrica, and prescribed Tramadol, as needed, for pain. (Tr. 231). Plaintiff was also recommended for a steroid injection and home exercise program with posture and body mechanics training. (Tr. 231).

On June 19, 2008, Dr. Shikhtholth completed a medical assessment evaluation form on behalf of Plaintiff, assessing Plaintiff's abilities to engage in work related activities. (Tr. 241). Dr. Shikhtholth wrote Plaintiff could: occasionally lift and/or carry five to ten pounds; stand and walk for a total of two hours, and sit for a total of three hours during an eight hour workday; occasionally balance, stoop and bend, reach, grasp, and handle; never climb, crouch, kneel, crawl, twist, or perform push/pull movements; and travel less than one hour during an eight hour workday. (Tr. 241-42). Dr. Shikhtholth stated Plaintiff had moderate pain at rest, moderately severe pain with occasional exertion, and severe pain with frequent exertion. (Tr. 242). Dr. Shikhtholth diagnosed Plaintiff with lumbar spinal stenosis, lumbar radiculopathy, and lumbar facet syndrome. (Tr. 241-42). A similar functional capacity evaluation form dated January 6, 2010 was submitted on behalf of Plaintiff and signed by Dr. Shikhtholth. (Tr. 256). This evaluation was consistent with the June 19, 2008 evaluation, except this evaluation did not state a weight limit where Dr. Shikhtholth noted Plaintiff could lift/carry only occasionally. (Tr. 256-57).

**II.     ALJ Decision**

Disability Insurance Benefits provide income to individuals who are forced into involuntary, premature retirement, provided they are both insured and disabled, regardless of indigence. *See* 42 U.S.C. § 423(a). Supplemental Security Income is a separate and distinct program; it is a general public assistance measure that provides an additional resource to the aged, blind, and disabled to ensure that their income does not fall below the poverty line. Eligibility for SSI is based upon proof of indigence and disability. *See* 42 U.S.C. §§ 1382(a), 1382c(a)(3)(A)-(C). Although DIB and SSI are separate programs, the law and regulations governing the process of determining disability for each are identical. *Patterson v. Bowen*, 799 F.2d 1455, 1456 (11th Cir. 1986). Applicants under DIB

and SSI must prove "disability" within the meaning of the Act, which defines disability in virtually identical language for both programs. *See* 42 U.S.C. §§ 423(d), 1382c(a)(3), 1382c(a)(3)(G); 20 C.F.R. §§ 404.1505(a), 416.905(a). A person is entitled to disability benefits when the person is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A "physical or mental impairment" is one resulting from anatomical, physiological, or psychological abnormalities that are demonstrable by medically acceptable clinical and laboratory diagnostic techniques. 42 U.S.C. §§ 423(d)(3), 1382c(a)(3)(D).

An ALJ must employ a five-step, sequential evaluation process to determine whether a claimant is disabled and entitled to benefits under the Act. *See* 20 C.F.R. §§ 404.1520, 416.920 (2010). The fives steps are: (1) is the claimant presently employed; (2) does the claimant have an impairment or a combination of impairments that is severe; (3) does the claimant's impairment or combination of impairment(s) meet or equal one of the specific impairments set forth in 20 C.F.R. Part 404, Subpart. P, Appendix 1; (4) is the person unable to perform his or her former occupation; and (5) is the person unable to perform any other work within the economy? An affirmative answer to any question leads either to the next question, or, at steps three and five, to a finding of disability. A negative answer to any question, other than step three, leads to a determination of "not disabled." *McDaniel v. Bowen,* 800 F.2d 1026, 1030 (11th Cir. 1986).

To perform the fourth and fifth steps, the ALJ must determine the claimant's Residual Functional Capacity ("RFC"). *McDaniel*, 800 F.2d 1026 at 1238-39. A claimant's RFC is what the claimant is still able to do despite his or her impairments, and is based on all relevant medical and

other evidence. *Id.* It also can contain both exertional and nonexertional limitations. *Id.* at 1242–43. At the fifth step, the ALJ considers the claimant's RFC, age, education, and work experience to determine if there are jobs available in the national economy the claimant can perform. *Id.* at 1239. To do this, the ALJ can either use the Medical Vocational Guidelines or hear testimony from a Vocational Expert ("VE"). *Id.* at 1239-40.

In the instant case, the ALJ determined Plaintiff has not been engaged in substantial gainful activity since April 8, 2008. (Tr. 12). The ALJ further determined that Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, lumbar radiculopathy, lumbar spinal stenosis, obesity, and arthritis. (Tr. 12-14). The ALJ found, at step (3), that Plaintiff does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1 (20 C.F.R. 404.1520(d), 404.1525, 404.1526, 416.920(d), 416.925 and 416.926). (Tr. 14). The ALJ's review of Plaintiff's medical evidence of the record determined that Plaintiff does not have a disorder of the spine (herniated disc, spinal arachnoiditis, spinal stenosis, osteoarthritis, degenerative disc disease, facet arthritis, or a vertebral fracture) with evidence of nerve root compression characterized by neuron-anatomic distribution of pain, limitation of motion of the spine, motor loss with associated muscle weakness, accompanied by sensory or reflex loss and positive straight leg raising tests as required by Section 1.04A. (Tr. 14). Further, the ALJ opined that the evidence does not indicate Plaintiff has spinal stenosis resulting in pseudoclaudication, established by findings on appropriate medically acceptable imaging manifested by chronic non-radicular pain and weakness resulting in the inability to ambulate effectively (as defined in 1.00B2b) as required by Section 1.04C of the Listings. (Tr. 15).

In her findings, the ALJ determined that Plaintiff has the RFC to perform sedentary work as defined in 20 C.F.R. § 404.1567(a), except Plaintiff can occasionally stand and/or walk for two hours during an eight hour workday. (Tr. 15). Further, Plaintiff must avoid postural maneuvers, other than stooping, and overhead work. (Tr. 15). In reaching this conclusion, the ALJ considered all symptoms and the extent to which these symptoms can reasonably be accepted as consistent with Plaintiff's objective medical evidence. (Tr. 15).

### III.    Plaintiff's Argument for Reversal

Plaintiff, who is now pro se, has not submitted a brief or specific arguments against the ALJ's finding of "not disabled." On September 29, 2011, the Clerk of Court advised Plaintiff she had 45 days in which to submit any brief, argument, list of authorities, or other statement to the court. To be sure, the Clerk of Court further advised Plaintiff that the court did not require a brief to be submitted.

### IV.    Standard of Review

Judicial review of disability claims under the Act is limited to whether the Commissioner's decision is supported by substantial evidence or whether the correct legal standards were applied. 42 U.S.C. § 405(g); *Wilson v. Barnhart*, 284 F.3d 1219, 1221 (11th Cir. 2002). The Commissioner's factual findings are conclusive when supported by substantial evidence. *Doughty v. Apfel*, 245 F.3d 1274, 1278 (11th Cir. 2001). "Substantial evidence is less than a preponderance, but rather such relevant evidence as a reasonable person would accept as adequate to support a conclusion." *Moore v. Barnhart*, 405 F.3d 1208, 1211 (11th Cir. 2005); *see also Martin v. Sullivan*, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)). The standard of substantial evidence is met if a reasonable person would find that the evidence of record

is sufficient to support the challenged conclusion. *Holladay v. Bowen*, 848 F.2d 1206, 1208 (11th Cir. 1988). "Substantial evidence may even exist contrary to the findings of the ALJ, and [the court] may have taken a different view of it as a factfinder." *Barron v. Sullivan*, 924 F.2d 227, 230 (11th Cir. 1991).

If supported by substantial evidence, the Commissioner's factual findings must be affirmed, even if the record preponderates against the Commissioner's findings. *Crawford v. Comm'r of Soc. Sec.*, 363 F.3d 1155, 1159 (11th Cir. 2004); *see also Martin*, 894 F.2d at 1529. The court is required to give deference to factual findings, with close scrutiny to questions of law. *Cornelius v. Sullivan*, 936 F.2d 1143, 1145 (11th Cir. 1991).

## V. Discussion

Because Plaintiff submitted no brief or other materials raising specific arguments or objections to the ALJ's conclusion, the court need only examine whether substantial evidence exists to support the ALJ's findings.[2] *See United States v. Valladares*, 544 F.3d 1257, 1267 (11th Cir. 2008) (issues not challenged on appeal are deemed abandoned); *Doe v. Moore*, 410 F.3d 1337, 1349 no. 10 (11th Cir. 2005) (issues raised without supporting substantive argument are deemed abandoned); *Marek v. Singletary*, 62 F.3d 1295, 1298 no. 2 (11th Cir. 1995) (issues not clearly raised in the briefs are considered abandoned.).

### a. Substantial Evidence Supports the ALJ's Findings

It is axiomatic that Plaintiff bears the burden of proving that she is disabled. *See* 20 C.F.R. §§ 404.1512(a), 416.912(a) ("[Plaintiff] must furnish medical and other evidence we can use to reach

---

[2] Notwithstanding this black letter rule of law, the court has reviewed the ALJ's determination to ensure that proper legal standards were applied below. The court finds they were.

9

conclusions about [her] impairment(s)"); 20 C.F.R. §§ 404.1512(c), 416.912(c) (requiring claimant to provide evidence showing how her impairments affect her functioning during the alleged period of disability). The final responsibility for determining Plaintiff's RFC was reserved to the Commissioner. *See* 20 C.F.R. §§ 404.1527(e), 416.927(e) (opinions on some issues, such as a claimant's RFC or ability to work, are not medical opinions, but rather "opinions on issues reserved to the Commissioner because they are administrative findings that are dispositive of the case"); 20 C.F.R. §§ 404.1546(c), 416.94(c) (at the hearing level, the ALJ is responsible for determining a claimant's RFC). Social Security Ruling 96-5p explains the difference between a medical source opinion and the RFC determination:

> A medical source statement is evidence that is submitted to the SSA by an individual's medical source reflecting the source's opinion based on his or her knowledge, while an RFC assessment is the adjudicator's ultimate finding based on a consideration of this opinion and all the other evidence in this case record about what an individual can do despite his or her impairment(s).

*See also Cooper v. Astrue*, 373 F. App'x. 961, 962 (11th Cir. 2010).

In determining Plaintiff's RFC, the ALJ was not required to adopt checkbox form limitations offered by Dr. Shikhtholth. (Tr. 241-42, 256-57). Treating source opinions are entitled to controlling weight only if they are well-supported by medically acceptable clinical and laboratory diagnostic techniques and are not inconsistent with the other substantial evidence in the record. 20 C.F.R. §§ 404.1527(d)(2), 416.9127(d)(2). Therefore, it is permissible for an ALJ to discount some or all of these limitations for good cause, particularly where, as here, the limitations were not bolstered by the evidence, the evidence supported a contrary finding, or the limitations were conclusory or inconsistent with the source's own medical records. *See* 20 C.F.R. §§ 404.1527(d)(3)-(4),

416.927(d)(3)-(4); *Phillips v. Barnhart*, 357 F.3d 1232, 1240-41 (11th Cir. 2004) (ALJ may properly discount a treating source's opinion that is inconsistent with the medical evidence or otherwise lacks support in the record).

The ALJ expressly considered, discussed, and gave limited weight to the limitations indicated by Dr. Shikhtholth in the checkbox forms. (Tr. 14, 18). As the ALJ recognized, however, the more severe restrictions noted in these forms were inconsistent with the limitations Dr. Shikhtholth stated in the treatment records (Tr. 18, 183, 235, 241, 256). *See* 20 C.F.R. §§ 404.1527(d)(4), 416.927(d)(4) ("Generally, the more consistent an opinion is with the record as a whole, the more weight we will give to that opinion."); *Crawford*, 363 F.3d at 1159 (ALJ properly discounted treating physician's opinion that was inconsistent with his own treatment notes, unsupported by the medical evidence, and appeared to be based primarily on subjective pain complaints).

Under the Act, merely alleging severe pain or other subjective symptoms is insufficient to establish disability. *See* 20 C.F.R. §§ 404.1529(a), 416.929(a) ("[S]tatements about your pain and other symptoms will not alone establish that you are disabled."). Rather, to the extent that Plaintiff bases her claim on subjective symptoms such as pain, she must show both an underlying medical condition that could cause pain, and evidence of its alleged intensity, persistence, and limiting effect. *See* 20 C.F.R. §§ 404.1529(b), 416.929(b)-(c). In evaluating the alleged intensity, persistence, and limiting effect, the ALJ considers "whether there are any inconsistencies in the evidence and the extent to which there are any conflicts between [Plaintiff's] statements and the rest of the evidence." 20 C.F.R. §§ 404.1529(c)(4), 416.929(c)(4).

The ALJ provided a thorough rationale based on substantial evidence for partially discounting the credibility of the alleged intensity, persistence, and limiting effect of Plaintiff's

subjective pain complaints, including, but not limited to, the following: (1) only sporadic medical treatment reflected in the record; (2) no disc herniation or nerve impingement shown in the lumbar MRI (Tr. 222); (3) other than one epidural steroid injection in April 2008, only conservative treatment pursued (Tr. 175); (4) pain at only 4 or 5 out of 10 just one day before alleged onset (Tr. 183); (5) in June 2008, Dr. Haggag did not indicate that her back impairment was an "active problem" (Tr. 233); and (6) treating physicians repeatedly recommended that she monitor her diet, walk at least four times per week, and perform a home exercise program, and Plaintiff testified she did not follow these recommendations. (Tr. 45-46, 59, 166-67, 182, 184-85, 187-88, 190, 192-94, 231, 235). *See Wilson*, 284 F.3d at 1226 (ALJ may properly reject a claim of disabling pain or other subjective symptom by proving a specific rationale based on substantial evidence).

Based on Plaintiff's vocational profile and RFC for a modified range of sedentary work, the ALJ elicited testimony from a Vocational Expert, who concluded that Plaintiff can perform unskilled sedentary jobs, such as finisher, final assembler, and rotor assembler, that exist in significant numbers in the national economy. (Tr. 64). *See* 20 C.F.R. §§ 404.1566(e), 416.966(e) (Commissioner may use a Vocational Expert to assess whether a claimant can perform other work that exists in the national economy.)

Accordingly, the substantial evidence supports the ALJ's decision that Plaintiff was not disabled under the Act. *See* 20 C.F.R. §§ 404.1520(g), 416.920(g) ("If you can make an adjustment to other work, we will find you not disabled."

## VI. Conclusion

The court concludes that the ALJ's determination that Plaintiff is not disabled is supported by substantial evidence and proper legal standards were applied in reaching this determination. The

Commissioner's final decision is therefore due to be affirmed, and a separate order in accordance with this memorandum of decision will be entered.

      **DONE** and **ORDERED** this   29th   day of August, 2012.

                                                 **R. DAVID PROCTOR**
                                                 UNITED STATES DISTRICT JUDGE